Good morning again, Your Honor. I'm Margaret David on behalf of the United States Appellant in this case. I'm an Assistant United States Attorney in the District of Guam. As in the first case, I don't have anything new to add other than what's already been submitted in the brief, except simply to say that it's the government's position that the District Court, in its order granting the defendant's motion to suppress, should have asked the question whether, given the totality, the circumstances, the defendant's motion to suppress would be acceptable. In both cases, did the defendant, who was supervised by the Guam Probation Office for having committed a drug trafficking crime, did he have a reasonable and legitimate expectation of privacy that outweighed the government's interest in this case in searching his home? The government also relies on the Supreme Court cases of Knight and Griffith v. Wisconsin, and also this Court's case in United States v. Crawford. Our reading of the case, at least in the government's position, teaches us that the ultimate inquiry is, even absent an explicit condition of a search condition, the ultimate inquiry should be, was the search by the probation officer justified based on reasonable suspicion? Your first argument is obviously because, even though the court didn't specifically order it, the defendant later signed a consent to search with the probation office as reasonable conditions of probation. But then you're going to a secondary argument that under Knight or Griffith, that he is in a different class anyway, and based on the totality of the circumstances here, that that level is met because of his status of, I think they had some informant information, and that was fairly recent. And they went over and that the government's got an interest in making sure that people that have already committed crimes don't continue to endanger the community, right? That's correct, Your Honor. Okay. But the next, when they get there, they have an encounter where he's got... Yes, Your Honor. They think he has a gun, but it turns out to be a pellet gun or something? That's correct. When they first encounter the defendant at his home, he meets the probation officer by his front door. The probation officer notices that he's carrying what appears to be a gun. They're able to retrieve the gun from the defendant, and then they talk to the defendant in his garage. After a pat-down search, the probation officers discover a bag of ice. As part of their duty to monitor this probationer, whether or not he's... As part of their duty to monitor the defendant, who was convicted of a drug trafficking crime, they asked him, they have a conversation, where did you get this ice? Do you have more? The defendant tells them, yes, it's in my bedroom in the house. Well, let me ask you, he signs as a condition of his probation that he can be searched, but then later the police, when they're out there, ask him if they can, do you mind if we search or something along those lines. At the time that they ask that question, did the officers have their guns drawn? At that point, they didn't have their guns drawn. As I recall, when they were able to secure the pellet gun from the defendant, they had already secured the gun. When the defendant met them at the garage, or when the encounter between all parties occurred at the garage, that was when one officer began to search the defendant and discovered the bag of ice. Well, let me ask you, okay, then, did the court make any factual findings from your perspective about consent? Because the defendant did tell the officers, okay, yeah, you can go ahead and search, and he had signed a prior search, but did the court make any factual findings about, well, yeah, you only consented because you had already signed? That was the only finding. Well, is that kind of a killer for you? I mean, does that prevent us from finding consent again? Well, our argument on appeal is, if you look at the entire record, that encounter between the defendant and the probation officer, notwithstanding the probationer signing the agreement with the agency, that encounter with the defendant, that certainly was one factor of the consent. Aside from that. Okay, the consent's a legal finding, but if contained in that, if there's certain factual findings made by the court, we may be constrained by those. Are there any there? Your counsel's going to tell me about it. Your co-counsel's going to say, respond to that, I'm sure, when he gets up. Because the trial court is there. The district court is there. We're not there. So on certain things that the court believes, if the court makes certain factual findings, it's hard. That's an uphill battle for you on that. We pretty much have to accept those. Your Honor, it was during that encounter, when the defendant was caught with the bag of ice on his person, that he told the probation officers where the drugs was, go ahead, it's in my room. I give you consent to search my house. But what did the trial court say about that? Did the trial court say he really voluntarily consented or not? The trial court relied in large part on the agreement that the defendant made to allow the search during his intake processing and did not find that to be a sufficient consent in this case. Thank you, Senator. Let's be clear about consent at two different points. At ER 278, the defendant was led to believe that a search would be conducted even if his consent was withheld. I'm talking about the consent at his home. Thus, the defendant's consent was not voluntary. Is it your argument that we should find that to be clear error as a finding? On the totality of the second case. On the totality of the second case. All right, second. I've got that. Go backwards. At the probation intake, we know that the court didn't order as a condition of probation that the house could be searched at any time, correct? Correct. However, when Mr. Carter came in to sign up for probation at his intake, inventory meeting, several things happened. One, he was presented with a written form. Two, the form was amended or changed to remove condition 16 and to change the word months to week. Then he signed it. Is there any evidence in the record that at the time that he signed that probation condition, whether or not it had been ordered by the court, he did so in an involuntary way? No, Your Honor. No, there's no evidence. Not only that, but there's no finding by the court as to the involuntariness of the execution of the probation condition in writing. The involuntariness finding is as to the search at the house, correct? That's correct. Now, who has the burden of showing that the written consent was voluntary? The government. The government. Where is the evidence? First of all, there's no finding that it was voluntary or not voluntary. The court didn't discuss that. The court only discussed whether it could be a condition if it was not ordered by the court. That's also DR 278. But my question to you is, if we have to determine that the consent was voluntary and there's no finding by the district court, should we not remand it to the district court to determine whether the form that was signed was signed voluntarily? To further develop the record, yes. But ultimately, as I mentioned earlier, I think the critical inquiry in this case is whether, based on the totality of the circumstances, did the Guam probation officer, when they conduct a reasonable search based on the reasonable suspicion, it is particularly dependent. And the record as a whole, it's relevant to this issue. Okay, you keep saying that, but just before I have you wrap up, give me your best argument on why his status as a probation officer in the totality of the circumstances here gave the probation officers reason to search his home. Give me your best argument. Tell me what. Well, Your Honor, Section 8110 of Title VII of the Guam Code annotated, it's the duty of the probation officer to keep informed concerning the conduct and condition of each probation officer. No, no, no. I wanted totality of the circumstances. What are the totality of the circumstances here? Well, the Guam probation received information that this defendant, McCarthy Carter, who had already been previously convicted of a drug trafficking crime, was dealing drugs again. The Guam probation officer who was responsible for supervising this defendant sought approval from his supervisor to conduct this search. When they... Fact specific, what was the time of the information relative to the time that they went out and searched? They got the information on day one. The next day, the probation officer received the approval from his supervisor to conduct this home search. When they confront the defendant at his garage, he's caught with a bag of ice. Surely was it not part of their duty as part of monitoring this defendant to inquire if there was any more ice on him? Having asked that question, the defendant then told his probation officer, sure, there's more ice in the room. Okay. Thank you, Your Honor. Good morning. Good morning. May it please the Court, my name is Howard Trapp, and I represent the appellee, Mr. Carter, in this matter. And I wish to say at the outset that there's been a lot of talk about these various cases, but there's one component of the cases that hasn't really been touched upon, and that is the cases have the component of saying that there is a particular condition, such as the right to inspect, but implicit in that is the component that the defendant has been put under the supervision of a probation officer. And the government in this case, the government's case concedes that the court's probation order contains no conditions relating to his defendant's supervision. The government concedes that this was unsupervised. So that Mr. Carter, his privacy rights were never reduced. He has... What you're saying, even though he's been convicted of drug charges, and they receive information that, you know, I mean the community is supposed to be, you know, whether you have a probation officer or not, the community is, you know, there is some, whether you're on supervised or unsupervised probation, that, you know, that the community will be protected from the continuing activity. They receive information that he is dealing. They act on it quickly. Why doesn't he have some reduced expectation of privacy, both because of his status as a convicted drug offender and informant information that he continues to deal? Because he was not under any... Because there was never any conditions set which would give him that expectation except the lies that were told to him by the probation office. Well, his conviction puts him... I mean, he isn't in the same status that you or I are in the sense that we haven't been convicted and that the police receive information that we're dealing drugs. So, I mean, he has been convicted of that. So you're saying he is in the exact same position relative to the Fourth Amendment that you or I are? We're all born with this, you know, Fourth Amendment right. We can obviously lose it for various reasons. He still had it because... And completely unfettered even though he had been convicted. It was completely unfettered because he said... because the condition was simply that he go take a... that he check with mental health and go through a course or whatever treatment he has to do there and he had to pay a $10,000 fine. And that was it. Now why would that give him any reasonable expectation that he had less privacy rights than anybody else? The only reason that he would have, as a matter of fact, a lesser expectation... Well, you're talking about an expectation. He did sign something where he agreed to search. Now, you know, if he didn't want to sign that, why couldn't he go back to the court and say, you know, they want me to sign this. I don't think that I should have to. You didn't order that to me. Well, in the first place, he was... They amended the judgment. It was 26 days later, apparently, because of the dates of the thing he signed and the stipulation. They somehow called him back in. There's no evidence whatsoever he was represented by counsel... Well, he was represented by counsel in the case, but there's no evidence that his counsel was there. And during the colloquy between the court and the government, it was pretty much acknowledged that counsel wasn't there. And let's take a look at what he signed. Counsel, do you think that every time that a convicted felon reports to his probation officer, counsel has to be with him? Well, he had no obligation to report to the probation officer. And it wouldn't even enter the private counsel's retainer to go to the probation office with him. Well, I would have done it, Your Honor, but I don't know about others. But what they gave him, what they gave him to sign was, it had started off with a lie. And that is, it said, in accordance with authority confirmed, conferred by the probation conditions, you've been placed on probation. And then they told him that he has to consent to all of these. Now, let's go to that. What is the evidence in this case, and upon whom is the burden of proof, to show that the consent in writing signed by your client was not voluntary? I think — First of all, do you agree with counsel that there was no finding by the court one way or the other as to the consent to the document? There was no finding as to this particular document. That's true. But I think that as — I think that the evidence, the only evidence is that he signed it because, it says, in accordance with authority conferred by the probation conditions. He was told that he had to sign it. And they told him he had to sign it. That's what you're arguing we should find. My question is, should the court of appeal make a finding of fact as to the voluntariness of a consent, or should it be returned to the trial court for the trial court to make such a finding? I don't think it's necessary, Your Honor, because under the law of Guam and under the facts, the undisputed facts, and under the government's concession, this probation was unsupervised. So what are they doing bringing him in? We're talking about two different things. Indulge me for a moment. Yes. One is the condition of probation. If they impose a condition of probation, whether he signs an agreement is superfluous. The condition of probation is imposed. The only purpose of signing the agreement is to drive home to him what the terms of the agreement are. But the condition of probation can be imposed without him signing it. The court never did it. The court never did it. They didn't do it. The court had to do it. The condition of probation, draw an X to it. Right? But he signs a document where he consents to the search. Independent of the condition of probation, he may have been misled. He may have had duress placed on him. He may have been bamboozled into signing it. Right? The record is silent. But beyond that. And there's no finding as to that. But beyond that, the probation officer had no authority to supervise him. It doesn't make any difference whether he has authority. A policeman shows up at my house. He has no authority to search it. He says, may I search your house? I say, yes. End of story. Whether he has authority or not. The question is, was there consent to the search? Now, if there's some presumption arising from the man's signature, then you lose. We can find according to the presumptive evidence. I don't know that there is such a rule. My question to you is, should that not be remanded to the district court to make a determination whether the original document was signed by Carter voluntarily? A police officer shows up at your door and says, we have a search warrant, so we're going to search your house and you believe him. You don't ask to see it. You believe him. You let him in. You consent. But he doesn't have a search warrant. That's a different issue. I agree with you. And I think that counsel has already agreed that as to the search of the house, when he showed up with the condition of the paper, the defendant was led to believe that a search would be conducted even if his consent was withheld. Thus, the defendant's consent was not voluntary. Fine. That consent to enter the house was not voluntary at the time. But earlier, he had signed a consent which he had not revoked. I'm suggesting to you, Your Honor, that the consent when the police officer shows up at the house and says, I have a search warrant, and he doesn't, it's a real consent, but it's not voluntary. I'm suggesting that having him sign this in the first place, which they had no authority to do, but which they informed him that he had to do, is the same sort of thing. I mean, just because it's separate. Is that true? Just because it's separated in time. But isn't there, there's no finding that his will was overcome by duress, coercion, or bamboozling, right? The court found that because he believed that he had to allow them to do it because of his document. I've got one other question here that I want to. Regardless of the propriety of the warrantless search, why isn't the bag of drugs found on Carter's person admissible? My understanding of the record is that the probation officer searched Carter after he reappeared with a rifle to ensure that he wasn't armed. Because they went to his house, which they weren't authorized to do. They knocked on his door, which they weren't authorized to do, and then he opened the door, which he wasn't required to do, and they saw him with a pellet gun. Because that was the original search, when they did that. And then because they saw the pellet gun, they didn't know it was a pellet gun, they freaked out. So knocking on the door is a search? Well, they weren't authorized to go to his house, because that is one of the conditions that the court may set under the statute, but it was never set. I have a quick question as your time is running out. Is the Fifth Circuit's decision in United States v. Keith distinguishable from this case? Are you familiar with that? Yes. All right. Well, I think it's distinguishable in the sense that they say that, and I don't know how far you can take this or what the evidence was in that case, but they say because the courts in that particular jurisdiction has repeatedly said that as a matter of law, and I don't know if it's good law, but as a matter of law, that probation officers can go out and search people's houses, but therefore there should have been a reasonable expectation that that would occur. And in this case, we don't have that. We simply have the tradition, the standard condition on this probation officer that they did it. We had nothing from the court that said this was standard operating procedure in Guam. Is that correct? It – well, that's true, but the law is very clear that the conditions must be set by the court. By the court. All right. Thank you. And could I just add that it would – if this document had been brought to the door and he had been told he had to sign it, we wouldn't be having this conversation, Judge Mayo, because it would be just like showing up and saying we have a search warrant. Well, it wouldn't be the same fact. So, of course, we wouldn't be having this conversation. But does it make a difference that it was done earlier?  Thank you for your argument, counsel. Thank you. Basically, you've used your time, but let me ask if – did any – did you want to follow up? No, I'm all right. All right. The matter then will stand submitted. Thank you. Court then will call the next matter of the Attorney General of Guam v. William Thompson, cases 03-15823, 03-15999. And if I didn't previously say it, the former matter of Carter will stand submitted at this time. Thank you. All right. Just so that we're clear, you have – if both of you are lawyers, you have 20 minutes between you. All right. Well, he probably is a lawyer.
judges: D.W. Nelson, Callahan, Bea